# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ORLANDO BETHEL, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NO. 10-0009-CG-N |
| | ) |
| CITY OF MOBILE, ALABAMA, et. al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiff, Orlando Bethel, brought this lawsuit against the defendants, the City of Mobile, Alabama, Mayor Sam Jones in his official capacity, Police Officer Michael P. Ellzey, Police Officer Jonathan David Lee, and three unnamed police officers in their individual and official capacities, in this court for injuries he alleges he suffered when he was arrested and charged with disorderly conduct during the 2009 Mardi Gras parade in Mobile, Alabama. (Doc. 14). Officers Ellzey and Lee have filed a motion for summary judgment. (Doc. 74). The City of Mobile and Mayor Jones have filed a separate summary judgment motion. (Doc. 78). Both motions have been fully briefed by the parties and are ripe for disposition. For the reasons set forth below, the motions are due to be granted.

## Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor.  Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material

issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in [the non-moving party's] pleading; rather, its response .... must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

**Facts**

Where, as here, there is a claim of qualified immunity by one or more defendants, the court resolves all issues of material fact in favor of the plaintiff, and then determines the legal question of whether the defendants are entitled to qualified immunity under that version of the facts. Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002). In response to the defendants' motions for summary judgment, plaintiff has submitted two affidavits. Therefore, any contested facts are resolved according to plaintiff's version of events as set forth in those affidavits.

On the evening of February 23, 2009, plaintiff Orlando Bethel attended a Mardi Gras parade in downtown Mobile, Alabama. Plaintiff was accompanied by his wife and three minor

children. Their purpose was to evangelize their sincerely held religious beliefs. According to the police report, filed by Officer Ellzey, plaintiff and his family carried a total of five signs displaying the following statements:

"God hates you wicked baby killing whores repent"

"God hates gays repent or burn in hell"

"God hates you sinners"

"Repent whores Jessica Miller"

"Repent whores"

According to plaintiff, the sign he personally carried stated "GOD hates you SINners repent in JESUS name live SIN free." Plaintiff does not otherwise dispute the content of the signs carried by him and his family. At approximately 7:00 p.m. that evening, plaintiff was approached by Mobile Police Department officers who told plaintiff to put down the signs. Plaintiff refused to comply with the request.

Defendants, Officers Ellzey and Lee, were police officers employed by the Mobile Police Department. On the evening of the events in question, Officers Ellzey and Lee were assigned to work crowd control during the Mardi Gras parade. At approximately 7:00 p.m., the officers were dispatched to the area of Government Street and Lawrence Street in response to numerous calls about several subjects that were holding up signs that were allegedly abusive and obscene. Upon arrival Officer Ellzey informed plaintiff that he was creating public alarm by holding the signs, and that he needed to put the signs down. Plaintiff did not comply and police took the signs away from plaintiff and his family.

Upon further investigation, Officer Lee made contact with Renee Cook, who informed

him that plaintiff had harassed her teenage daughter by shouting at her and calling her a whore and a prostitute because she was downtown for the Mardi Gras parade.[1] The officers gave Orlando Bethel the opportunity to stop harassing people, but he continued to repeatedly use allegedly abusive, obscene, and threatening language. Ms. Cook heard him use the word "whoremongers", and also heard him say that everyone was going to hell for attending the parade. Officer Lee then took plaintiff into custody, charging him with disorderly conduct. He was transported to Metro Jail and booked on the disorderly conduct charge.

According to her affidavit, Ms. Cook had taken her 13-year old daughter and some other children to the Mardi Gras parade. They set up chairs on the sidewalk in front of the McDonald's on Government Street. Cook's daughter was sitting on her boyfriend's lap. Ms. Cook had turned away to speak to someone when she heard a man asking her daughter questions. Ms. Cook turned around and saw plaintiff shouting at her daughter. Plaintiff and other persons with him were holding signs that contained what she considered to be obnoxious words. Ms. Cook heard plaintiff ask her daughter if the boy whose lap she was sitting in was her brother. When Cook's daughter replied, "No, why?", plaintiff repeatedly called her a "whore" and a "slut." Plaintiff also repeatedly shouted to Cook's daughter that she would "burn in hell." He also said to her that she was going to kill her babies because she was sitting in her boyfriend's lap which is a sin. Ms. Cook considered the language plaintiff directed to her daughter abusive, obscene, and threatening, and she believed that her daughter was scared of plaintiff. In response, Ms. Cook yelled at plaintiff to back off and leave her daughter alone. Ms. Cook then called

---

1. Plaintiff denies having any contact at all with Ms. Cook or her daughter. The relevance of the incident lies not in whether it actually took place, but rather that it was reported to police as having taken place. Plaintiff does not dispute that such a report was made.

"911" to report plaintiff's conduct to the police. Plaintiff denies saying anything to Ms. Cook and her daughter, but does not dispute that her information was conveyed to police. Ms. Cook is listed as a witness on Officer Ellzey's arrest narrative.

When police officers took plaintiff into custody, they seized the five signs he and his family were carrying. According to Officer Ellzey's arrest narrative, the signs were taken to the police property section for evidence. Plaintiff states that, despite his request, the signs have not been returned to him.

In his response to the motions for summary judgment, plaintiff submitted an affidavit concerning events occurring on September 18, 2010, during which Bethel claims he and his family were arrested . The affidavit provides no details of the arrest, other than to say that all charges were dropped. He does claim that during his arrest and booking process, police officers seized a video camera and a digital audio recorder from him. He further claims he was not provided any type of receipt for these items, nor has his equipment been returned to him.

## Discussion

Plaintiff's complaint is based on 42 U.S.C. § 1983. He alleges that by arresting him, the defendants violated his civil rights by denying him his rights of freedom of speech (Count I), freedom of assembly (Count II), equal protection (Count III), and free exercise of religion (Count IV). He also claims that he was arrested without probable cause and that his signs were seized in violation of the Fourth and Fourteenth Amendments (Count V). He seeks damages against the defendants, a declaration that the defendants acted unconstitutionally, and a

permanent injunction against the enforcement of the city ordinance prohibiting disorderly conduct.[2]  Plaintiff's motions for preliminary injunction (Docs. 1, 13, 14 and 50) have previously been denied by the court.  (Docs. 17 and 52).  The court will address the motions for summary judgment as they pertain to each of the parties in turn.

**Mayor Jones and Officers Ellzey and Lee in their Official Capacities**

Plaintiff has sued defendant Mayor Jones only in his official capacity as Mayor of the City of Mobile.  Plaintiff states as much in the case caption and paragraph one of the amended complaint. (Doc. 14).  Further, there is no indication in the remainder of the amended complaint that plaintiff intended to sue Mayor Jones in his individual capacity.  In addition, Officers Ellzey and Lee have been sued in their official capacities as police officers for the City of Mobile, as well as in their individual capacities.

Official capacity lawsuits, in contrast to individual capacity actions, "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)).  Because, under Monell, local government units can be sued directly for damages and injunctive or declaratory relief, there is no longer a need to bring official capacity actions against local government officials. Id. at 167.  Accordingly, the claims against Mayor Jones, and against Officers Ellzey and Lee in their official capacities, are identical to, and duplicative of the charges against the City of Mobile.  Therefore, Mayor Jones is entitled to

---

2. The city ordinance at issue, Section 39-1(a) of the Mobile City Code makes the commission of an offense which is a misdemeanor under state law an offense against the city. Disorderly conduct is a misdemeanor under Alabama law.  Ala. Code § 13A-11-7.

summary judgment in his favor.  See Hardy v. Town of Hayneville, 50 F.Supp.2d 1176, 1185 (M.D. Ala. 1999) (Section 1983 claims against city officials in their official capacities dismissed under the authority of Graham).  Officers Ellzey and Lee are likewise entitled to summary judgment to the extent they have been sued in their official capacities.

### The City of Mobile

There is no question that municipalities can be sued directly under § 1983 for monetary, declaratory or injunctive relief.  Monell, 436 U.S. at 690.  However, in order for liability to attach, a plaintiff must prove that the execution of a government's policy or custom, whether made by lawmakers or by official policy, causes the injury for which complaint is made.  Id. at 694.  "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."  Id. at 691.  "[I]n other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  Id.

Plaintiff argues that the City of Mobile has a policy of unconstitutional arrests of citizens.  The only evidence of this policy that he identifies, however, is the fact of his own arrest on February 23, 2009, for disorderly conduct.[3]  From the materials submitted to the court in connection with the instant motions for summary judgment, there is simply no other evidence of a pattern, practice or policy that could have caused any injury to plaintiff.  Even assuming that plaintiff's arrest was unconstitutional, this one incident does establish liability on the part of the city based on a pattern, practice or policy.

---

3. While plaintiff states in his second affidavit that he and his family were arrested on September 18, 2010, there is no mention of any of the circumstances of the arrests.  There is

**Officers Ellzey and Lee in their Individual Capacities**

The only claims remaining for evaluation on the motion for summary judgment are those against Officers Ellzey and Lee in their individual capacities. Officer Ellzey was the law enforcement officer who charged plaintiff with disorderly conduct. Officer Lee, according to Officer Ellzey's affidavit, obtained information from Ms. Cook regarding the altercation with plaintiff, and thereafter actually took plaintiff into custody. Both officers seek summary judgment on the basis of qualified immunity.

A government official who is sued under 42 U.S.C. § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity. Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004) (citation omitted). The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, see Anderson v. Creighton, 483 U.S. 635, 638, (1987), protecting from suit "all but the plainly incompetent or one who is knowingly violating the federal law." Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001). That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities. Redd v. City of Enterprise, 140 F.3d 1378, 1382 (11th Cir. 1998) (citing Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc)) (quotation omitted).

To be eligible for qualified immunity, the official must first establish that he was performing a "discretionary function" at the time the alleged violation of federal law occurred. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1263-1264 (11th Cir. 2004). Once the

---

certainly no allegation that the arrests were unconstitutional in any way.

official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity. Id. at 1264. In order to demonstrate that the official is not entitled to qualified immunity, the plaintiff must show two things: (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was "clearly established" at the time he did it. Saucier v. Katz, 533 U.S. 194, 201 (2001); Holloman, 370 F.3d at 1264.

In this case, there can be no doubt that Officers Ellzey and Lee were acting in their discretionary capacities when they arrested and charged plaintiff. Plaintiff has admitted that Officers Ellzey and Lee were each "acting within the course and scope of his employment as a police officer for the City" at all times relevant. (Doc 14, pp. 4-5). In addition, making an arrest is within the official responsibilities of a police officer in Alabama. Ala Code § 15-10-1. Alexander v. State ex rel. Carver, 150 So.2d 204, 206 (Ala. 1963) (police officer has the duty and responsibility of enforcing municipal and state laws and making arrests for violations of such laws). Because making an arrest is within the official responsibilities of a Mobile Police Officer, Ellzey and Lee were performing discretionary function when they were involved in the arrest of plaintiff. See Crosby, 394 F.3d at 1332.

The crux of plaintiff's case is that his arrest on February 23, 2009, was unlawful because it was without probable cause. All of the counts of his complaint are dependent upon a constitutionally unlawful arrest. If police had probable cause to arrest plaintiff, all of his claims must fail. An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest. Brown v. City of Huntsville,

Ala., 608 F.3d 724 (11th Cir. 2010); Dahl v. Holley, 312 F.3d 1228, 1236 (11th Cir. 2002) (whatever the officers' motivation, however, the existence of probable cause to arrest defeats plaintiff's First Amendment claim).

In this type of inquiry, the issue is not whether there was actual probable cause for the arrest, but rather whether police had arguable probable cause to believe an offense had been committed by plaintiff. Crosby, 394 F.3d at 1332-1333 (qualified immunity applies when there was arguable probable cause even if actual probable cause did not exist). Arguable probable cause exists if, under all the facts and circumstances, an officer reasonably could have – not necessarily would have – believed that probable cause was present. Id. (citing Durruthy v. Pastor, 351 F.3d 1080, 1089 (11th Cir. 2003) ("Arguable probable cause exists when an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed.")).

Plaintiff argues that there was no probable cause for his arrest because Officers Ellzey and Lee did not personally witness the altercation with Ms. Cook and her daughter. While Alabama law requires, in general, that a misdemeanor be committed in the presence of a law enforcement officer in order to justify a warrantless arrest, the Eleventh Circuit has held that a violation of this requirement does not raise federal constitutional concerns. In Knight v. Jacobson, 300 F.3d 1272, 1275-1276 (11th Cir. 2002), a § 1983 action, the plaintiff complained that Miami police violated his Fourth Amendment rights by arresting him on a misdemeanor charge without having personally witnessed the conduct.[4] The appellate court squarely rejected the argument, noting that "[t]here is no federal right not to be arrested in violation of state law."

---

[4] Like Alabama, Florida requires in general that a misdemeanor be committed in the

11

Id. at 1276. In the instant case, the court must likewise reject the claim that there was a constitutional violation in arresting plaintiff in whole or in part on information obtained from Ms. Cook and not personally observed by police. If this violation did occur, it may give rise to a state law claim, but it is not enough by itself to support a § 1983 claim. Id. Alabama's procedures and law regarding warrantless arrests are not written into the federal Constitution. See id.

In proscribing disorderly conduct, Alabama law makes it a misdemeanor to use "abusive or obscene language" in a public place with the "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." Ala. Code § 13A-11-7(a)(3). This code provision has been narrowly interpreted as to prohibit the use of "fighting words" only. Robinson v. State, 615 So.2d 112, 113 (Ala. Crim. App. 1992); Swann v. City of Huntsville, 455 So.2d 944, 950 (Ala. Crim. App. 1984). Fighting words are those words which have a likelihood of causing a violent response by the person to whom they are addressed. Robinson, 615 So.2d at 113 (citing Skelton v. City of Birmingham, 342 So.2d 933, 936-937 (Ala. Crim. App. 1976)). They are words that by their very utterance provoke a swift physical retaliation and incite an immediate breach of the peace. Id. The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight. Skelton, 342 So.2d at 937.

In light of the foregoing, the court has no trouble finding that the words allegedly used by plaintiff in his confrontation with Ms. Cook and her daughter at least arguably constitute fighting words. Therefore, based on the information available to police, there was at least arguable

---

presence of a law enforcement officer in order to authorize an arrest without a warrant.

probable cause for the arrest of plaintiff, as plaintiff was at least arguably guilty of disorderly conduct. There can be little doubt that repeatedly calling a 13 year-old girl a "whore" and a "slut" in the presence of the girl's mother serves no purpose other than to provoke a confrontation and carries no first amendment protection.[5]

In Gilles v. State, 531 N.E.2d 220, 221-222 (Ind. Ct. App. 1988), a street preacher accosted a crowd gathered for a festival, calling them, among other names, "sinners," "whores," "queers," "drunkards," "AIDS people" and "scum of the earth." The words were directed to the crowd in general, as well as several people individually. Id. at 221. The plaintiff argued that his arrest violated his right to free speech. Id. The court there determined that plaintiff's words were fighting words which were not protected by the prohibitions of the First Amendment. Id. at 222; see also State v. Broadstone, 447 N.W.2d 30, 34 (Neb. 1989) ("[y]our wife is a whore" and "[y]our daughter is a whore" held to be fighting words unprotected by the First Amendment); Mikhail v. City of Lake Worth, 2009 WL 1873650, *4 (S.D. Fla. June 30, 2009) (a street preacher used fighting words when calling people "sinners," "whores' and "prostitutes").

Further, the court notes that even if it were to disregard Ms. Cook's information, it would find that the signs carried by plaintiff, his wife and their minor children contain language that arguably constitute fighting words. It is reasonable for persons in the positions of Officers Ellzey and Lee to consider words such as "whores" and "wicked baby killing whores" as fighting words in connection with a Mardi Gras parade in downtown Mobile. It was also

---

5. Again, whether the confrontation actually took place is not the issue. What matters is whether police had an objectively reasonable belief, at the time of his arrest, that plaintiff had committed an offense. See United States v. Gonzalez, 969 F.2d 999, 1004 (11th Cir. 1992) (policeman's mistaken belief of fact can properly contribute to determination of probable cause to arrest).

reasonable for the officers to consider plaintiff responsible for the content of the signs held by his family, even if he was not personally carrying a sign containing fighting words. The officers therefore had at least arguable probable cause to arrest plaintiff for his display of the signs alone. Plaintiff has, therefore, failed to carry his burden that his arrest violated his constitutional rights.

Concerning plaintiff's First Amendment claim, the court finds that plaintiff's arrest was content neutral. Plaintiff has provided no evidence that he was selectively arrested while non-religious speakers went undisturbed. Redd v. City of Enterprise, 140 F.3d 1378, 1383 (11th Cir. 1998) ("[w]hen a police officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested"). Plaintiff's argument that there were persons displaying non-religious signs who were not arrested is not persuasive. Only if plaintiff provided that these other persons used language similar to that of plaintiff, would his argument have any merit. This plaintiff has not done and his argument therefore fails.

Along these same lines, plaintiff's claim that his equal protection rights were violated by his arrest also fails. Plaintiff asserts that defendants treated him differently based on his "religious content, viewpoint and expression." (Doc. 14, p. 15). His entire evidentiary support for such a claim consists of the statement that "[d]uring the time I was at the parade before and after I was arrested, I did see others with non-religious wording on banners and signs, but I did not see any of the City of Mobile Police Officers telling anyone else to put down their signs and banners, nor did I see the City of Mobile Police officers seizing any other non-religious signs or banners." (Doc. 91, p. 7).

14

Selective enforcement of the law is a violation of the equal protection clause. Dunn v. Hyra, 676 F.Supp.2d 1172 (W.D. Wash. 2009). In order to prevail on a § 1983 equal protection claim, a plaintiff must demonstrate that enforcement had a discriminatory effect and that police were motivated by a discriminatory purpose. Rosenbaum v. City and County of San Francisco, 484 F.3d 1142, 1152-1153 (9th Cir. 2007). "To establish a discriminatory effect, a [plaintiff] must show that similarly situated individuals…were not prosecuted." Id. (citing United States v. Armstrong, 517 U.S. 456, 465 (1996)). "To show discriminatory purpose, a plaintiff must establish that the decision-maker selected or affirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects on an identifiable group." Id. (citing Wayte v. United States, 470 U.S. 598, 610 (1985). To prove an equal protection violation, a party must identify affirmative evidence from which a jury could find that the officer's conduct was driven by an improper motive. United States v. Frazier, 408 F.3d 1102 (8th Cir. 2005); see also Beltran v. City of El Paso, 367 F.3d 299 (5th Cir. 2004) (an equal protection plaintiff must show that injuries are the result of law enforcement inaction or conduct pursuant to invidious policies). A plaintiff must prove that similarly situated individuals were not arrested to show discriminatory effect in a 1983 selective enforcement suit. Shqeirat v. U.S. Airways Group, Inc., 645 F.Supp.2d 765 (D. Minn. 2009); See also Radvansky v. City of Olmsted Falls, 395 F.3d 291, 314 (6th Cir. 2005) (merely alleging that plaintiff was treated unfairly is not sufficient to overcome summary judgment).

In the instant case, plaintiff has provided absolutely no evidence that he was treated any differently that similarly situated individuals. Merely saying, as plaintiff does, that there were others at the parade with non-religious banners and signs who were not asked to take down their

signs or who did not have their signs seized does not come close to meeting the evidentiary requirements necessary to defeat a summary judgment motion. Plaintiff provides no evidence as to the content of the signs, or whether any of the signs or banners contained "fighting words." There is also no evidence as to whether police received any reports of altercations involving any of these other sign and banner-carrying individuals. In short, plaintiff has provided no evidence that other individuals engaged in disorderly conduct and were not arrested or did not have their signs and banners seized. See Edington v. Yavapai County, 357 Fed.Appx. 888 (9th Cir. 2009) (summary judgment proper where, other than their subjective beliefs, plaintiffs failed to produce evidence raising a triable issue as to whether law enforcement officials failed to arrest other similarly situated citizens for disorderly conduct and harassment). Accordingly, plaintiff's equal protection claim is subject to summary judgment against it.

Finally, plaintiff alleges that the five signs carried by plaintiff were seized from him in violation of the Fourth Amendment.[6] He claims that the signs have not been returned to him now that his case has been nolle prossed by the state. Defendants are entitled to summary judgment on this claim. In Hudson v. Palmer, 468 U.S. 517, 533 (1984), the Supreme Court held that where a government official seizes a person's property, no due process violation occurs where an adequate post-deprivation remedy is available. See also Lindsey v Storey, 936 F.2d

---

6. Plaintiff makes mention of the alleged seizure of a video camera and a digital audio recorder by police in connection with his arrest on September 18, 2010. These claims are made in the two affidavits of plaintiff included as exhibits to his response to defendants' motions for summary judgment. (Doc. 91). To the extent that plaintiff intends to assert additional claims by means of these affidavits, the court finds these claims are due to be dismissed. The law in this circuit is clear that plaintiffs are not permitted to raise new claims in response to a defendant's motion for summary judgment. Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314 (11th Cir. 2004) (the liberal federal pleading standards do not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage).

554 (11th Cir. 1991) (no due process violation where Georgia statute creating a civil cause of action for wrongful conversion of personal property was available to plaintiffs). As in Lindsey, Alabama provides a civil remedy for deprivation of an owner's possession of his personalty. See Ala. Code 1975 § 6-5-260. In the absence of any evidence to the contrary, the court finds that this statute provides an adequate post-deprivation remedy for plaintiff regarding his signs. See Goodwin v. City of Fultondale, 706 So.2d 766 (Ala. Civ. App. 1997) (jury question as to whether police officer and city liable for conversion); Browning v. City of Wedowee, Ala., 883 F.Supp. 618 (M.D. Ala. 1995) (procedural due process claim dismissed on the basis of the availability of § 6-5-260). Therefore, summary judgment is appropriate on this claim.

### Un-Named Police Officers

As a final matter, the court notes that all claims against "Un-named Police Officers A, B and C" were dismissed as of November 29, 2010. On November 19, 2010, plaintiff moved to join three Mobile police officers as the formerly Un-named Police Officers A, B and C as defendants in this action. (Doc. 54). In response, the court ordered that plaintiff had until November 29, 2010, to file a second amended complaint naming these individuals. (Doc. 55). The order further stated that failure to file a second amended complaint would be deemed an abandonment of the issue and that the motion for leave to join would be denied without further order. No second amended complaint was ever filed by plaintiff, so these claims are deemed abandoned and dismissed.

### CONCLUSION

For the reasons stated above, defendants' motions for summary judgment are hereby

**GRANTED.** Any remaining claims against un-named police officers are **DISMISSED.**

**DONE and ORDERED** this 5th day of April, 2011.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE